COLUMBIAN MUT. LIFE INS. CO. *v.* GIPSON *et al.*

(Division B. June 12, 1939. Suggestion of Error Overruled July 18, 1939.)

[189 So. 799. No. 33719.]

J. Morgan Stevens, J. M. Stevens, Jr., Bob Ray and George R. Nobles, all of Jackson, for appellant.

894

**O. B. Triplett, Jr.,** of Forest, for appellees.

Argued orally by **J. M. Stevens**, for appellant, and by **O. B. Triplett, Jr.**, for appellees.

**Ethridge, P. J.,** delivered the opinion of the court.

On the 10th day of October, 1925, the Columbian Mutual Life Assurance Society issued its policy to James

L. Gipson, a member of Pinewood Council No. 33, at Magee, Mississippi, making Mrs. Rosa B. Gipson, his wife, the beneficiary, with the right on the part of the assured to change the beneficiary in the manner provided in the said policy. Among the benefits provided in the said policy under the heading, ''Total and Permanent Disability,'' are the following total disability provisions:

''7. Upon receipt of satisfactory proofs of the Assured becoming totally and permanently disabled from following any gainful occupation or profession by reason of any disease or accident, and which continuously and wholly prevents the Assured from engaging in any such occupation; or in the event of the entire and irrecoverable loss of the sight of both eyes; or the loss by severance of both hands at or above the wrist; or both feet at or above the ankle; or of the loss by severance of one limb at or above the wrist or ankle and the irrecoverable loss of sight of one eye; or the loss by severance of one hand at or above the wrist and one foot at or above the ankle, the Society, in lieu of all other benefits, agrees to pay: (a) A monthly income of 1% of the value of this Covenant at the time of such disability, and a like sum on the first day of each month and to charge against this Covenant as a lien the premiums due hereon, with interest at the rate of 5% per annum until such time as the monthly installments paid on account of total and permanent disability, together with the premiums so charged against this Covenant at 5% interest shall have equaled the value of this Covenant. (b) Should the death of the Assured occur before the entire amount of this Covenant has matured in the manner specified in Paragraph (a), the remaining portion will be paid to the Beneficiary in one sum, upon satisfactory proof of death. (c) Or, in lieu of the above provisions for total and permanent disability, the Assured may have the option of receiving in one sum, one-half (½) the amount which would be

due under this Covenant as a death benefit, upon surrender of the Covenant for cancellation.

"Proof of continued total and permanent disability shall be furnished as often as required by the Society, on forms prescribed by the Society, and any Medical Adviser of the Society shall be allowd to examine the person of the Assured in respect to any alleged disability at any time. If, however, the Assured fails to furnish due proofs, or should the Assured recover so as to be able to engage in any gainful occupation or profession whatsoever, the Society's obligation to pay further benefits or premiums shall cease, and the assured shall resume the payment of premiums on the premium due date following said failure or recovery."

At the time this policy or covenant was issued the Columbian Mutual Life Assurance Society was a fraternal benefit society under the provisions of Article 14 of chapter 127, Code of 1930. Section 5231 of the Code under this article 14, reads: "Any corporation, society, order or voluntary association, without capital stock, organized and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system and representative form of government, or which limits its membership to a secret fraternity having a lodge system and representative form of government, and which shall make provision for the payment of benefits in accordance with section 5235 hereof is hereby declared to be a fraternal benefit society."

Section 5232 under said article reads as follows: "Any society having a supreme governing or legislative body and subordinate lodges or branches by whatever name known, into which members shall be admitted in accordance with its constitution, laws, ritual, rules and regulations, and which shall be required by the laws of such society to hold periodical meetings, shall be deemed to be operating on the lodge system."

Section 5233, in regard to representative form of

government, reads as follows: "Any society shall be deemed to have a representative form of government when it shall provide in its constitution and laws for a supreme legislative or governing body, composed of representatives elected either by the members or by delegates elected directly or indirectly by the members, together with such other members as may be prescribed by its constitution and laws; provided, that the elective members shall constitute a majority in number and not less than the number of votes required to amend its constitution and laws; and provided, further, that the meetings of the supreme or governing body, and the election of officers, representatives or delegates shall be held as often as once in four calendar years. No member under age sixteen shall have voice or vote in the management of the society. No member, officer, representative or delegate shall vote by proxy.''

The other sections of article 14 deal with benefits, members and beneficiaries, funds, investments and organization of such fraternal assurance societies, and the powers given to them under the law, and rules and regulations for the control and government of such societies. At the time the policy here involved was issued, the Columbian Life Assurance Society was operating under the lodge system, with a representative form of government, etc., at Magee, Mississippi; and C. W. Mangum was collector or secretary, and attended to the collection of the dues or premiums for the members and for the Society, remitting the money so collected to the home office of the said Life Assurance Society.

In 1924 the State Legislature amended chapter 157, Laws of 1918, by chapter 191, Laws of 1924, authorizing fraternal societies to be converted into mutual life and disability insurance companies, so as to come within the provision of all laws governing mutual companies, and to operate under this article upon the terms and conditions therein named, being article 15 of chapter 127, Code 1930, in regard to mutual companies.

Section 5275 of the Code provides the conditions under which a fraternal benefit society organized under the laws of this state may be converted into a mutual life and disability insurance company. It reads as follows:

"Any fraternal benefit society organized under the laws of this state may be converted into a mutual life, or mutual life and disability insurance company, so as to come within the provisions of all laws governing mutual companies and operate under this article upon the terms and conditions as follows:

"Whenever the supreme governing legislative body of any fraternal benefit society incorporated under the laws of this state shall, by two-thirds vote, determine that a change or conversion from a fraternal benefit society to a regular mutual life or disability insurance company shall be to the best interests of the society and its members, or whenever a majority of the members in good standing of any such domestic fraternal benefit society shall, in writing, signify their desire for such conversion, then, in either event, said fraternal benefit society may adopt and file with the insurance commissioner of Mississippi an amendment to its articles of incorporation, authorizing it to be converted from a fraternal to a domestic mutual life or disability insurance company, and said amendment shall become operative upon its approval by and filing with the insurance commissioner, unless a later time be provided in said amendment. If the amendment is approved by the insurance commissioner he shall issue his certificate of approval in writing, and thereafter the company shall have legal existence as a domestic mutual life or disability insurance company and may reorganize by the election of a board of directors and the adoption of by-laws, and proceed to transact the business of such company in accordance with, and be subject to all of the terms and provisions of this chapter governing mutual companies.

"Provided, however, that no such conversion from a fraternal benefit society to a regular mutual life or dis-

ability insurance company shall be had unless written notice of such proposed change be deposited in the United States mail, registered, and postage prepaid to each member of such fraternal benefit society, at his last known post office address, at least 90 days before the proposed change or conversion is to be acted upon by said supreme governing body; but the notice provided herein shall not apply to or be required of any fraternal benefit society whose district councils, or state or division grand lodges, composed of delegates from branch councils or subordinate lodges, have by a two-thirds vote, already authorized or instructed its national council, or supreme legislative governing body, to change or convert their society into said mutual life and disability company at the time this section becomes effective.''

The resolution of the Columbian Mutual Life Insurance Company to the insurance commissioner recited its desire to come under the provisions of the statute governing mutual life and disability insurance companies, approved April 10, 1924, reciting, among other things: ''That in the opinion and judgment of said Society a change or conversion from a fraternal benefit society to a regular mutual life and disability insurance company is to the best interests of the Columbian Mutual Life Assurance Society and its members; and resolved further that the National Council, which is the supreme governing legislative body of said Society, does hereby adopt the attached amendment to its Articles of Incorporation, authorizing it to be converted from a fraternal benefit society to a domestic mutual life and disability insurance company, and directs that said amendment to its Articles of Incorporation be filed with the Insurance Commissioner of the State of Mississippi, with the approval of said Insurance Commissioner.'' It authorized and directed the president, secretary and general counsel of the society to take such steps and proceedings as were necessary to comply with the law, and to make such changes to perfect and consummate ''the conversion of

the said society into a mutual life and disability insurance company'' as were necessary, and all of the actions done by said officials of the society, in accordance with the authority embodied in these resolutions ratified and confirmed by the society and its national council as fully as if the national council had acted in the premises.

Thereupon the officers designated in the resolution presented the application to the insurance commissioner, and named the persons to be president, first and second vice presidents, secretary and treasurer; and also named a number of persons to act as the board of directors, to hold office until their successors should be elected and qualify.

Under section 13 of the application it is provided that: ''No rights, duties or obligations of members of the corporation, as determined by certificates or covenants issued prior to the approval and filing of this amendment, or as determined by the Constitution of the Columbian Mutual Life Assurance Society prior to said date, shall be affected by this amendment to the Articles of Incorporation, but subsequent to its approval and filing, no contracts or certificates of fraternal benefit insurance shall be written by the corporation, and all of its insurance contracts shall be written as mutual life or disability insurance contracts and determined by the laws relating to mutual life or disability insurance companies.''

The insurance commissioner, in accordance with the provisions of the sections above mentioned, and in accordance with the resolutions, amended the charter, and in the certificate of amendment recited: ''Whereas resolutions adopted by the National Council of the Columbian Mutual Life Assurance Society, a Fraternal Benefit Society incorporated under the laws of Mississippi, which National Council is the supreme governing legislative body of said Society, and which resolutions were adopted by said body by more than a two-thirds vote thereof, determining that a change or conversion from a Fraternal Benefit Society to a regular Mutual Life and Disability

Insurance Company is to the best interest of the Society and its members,'' etc. After the adoption of the amendment, making the said change from a fraternal benefit society to a mutual life and disability insurance company, the local lodges were abandoned, and no meeting thereafter held, the company conducting its business solely as a mutual company under article 15, chapter 127, Code of 1930.

A comparison of article 15 with article 14 of chapter 127, Code of 1930, shows a marked difference in the character of insurance, and the powers authorized to be exercised by a mutual life insurance company, as compared to a fraternal benefit society.

After the said amendment, the Columbia Mutual Life Insurance Company continued to use Mr. C. W. Mangum as its local representative at Magee; and through him collected premiums, and in certain cases conducted investigations on behalf of the company in connection with claims for disabilities, etc.

The insured, James L. Gipson, was a farmer living near Magee in the year 1932, during which period his health became bad. He kept up the premiums on his policy until December 27, 1933; at about which time, according to the testimony in the case for plaintiff, he went to Mr. Mangum for the purpose of filing an application for disability benefits, under the covenant or policy above mentioned. According to the plaintiff's evidence, Mr. Mangum was of the opinion that he was not totally disabled, under the terms of the policy, and that it would be useless to make the application unless Gipson could procure from the physicians, a statement that he was totally disabled, in accordance with Mr. Mangum's views as to the requirements of the policy.

There is, it is true, a dispute between the witnesses for plaintiff and Mr. Mangum as to what happened at that time, and also as to the physical condition of Gipson. It appears that the parties reached the conclusion that it would be necessary to secure a certificate of good health

and be reinstated in the Columbian Mutual Insurance Company, and the form was made out along this line, dated February 25, 1933. It was there stated that the policy had lapsed for non-payment of premiums on the first day of January, 1933; but the application was not acted upon, and Gipson was not reinstated.

In March, 1937, this suit was filed by John L. Gipson, the assured, in the Circuit Court of Smith county, against the appellant, in which it was alleged that Gipson became a member of the Columbian Mutual Life Assurance Society, being affiliated with Pinewood Council No. 33, on the 10th of October, 1925; from which time until December 27, 1933, the plaintiff paid defendant and its predecessors, without default or delinquency, "all assessments which were made against him pursuant to his contract of insurance with the defendant, and with said fraternal association, and paid all premiums which became due under said policy or covenant, and complied with all conditions therein contained which were requisite to the continuance of said contract in force." He alleged that for several months prior to December 27, 1933, in January, 1932, and at a time when his covenant was in full force, the plaintiff became totally and permanently disabled by disease, being thereby prevented from further engaging in any gainful occupation; that prior to December 27, 1933, he offered to furnish satisfactory proof of these facts to the defendant; but the said company denied all liability to the plaintiff for his total and permanent disability, and refused to consider his claim.

The declaration set out the clause of the contract relied upon for the benefits sued for, as stated above, and demanded judgment for the amount claimed under the policy during said period of time. Thereafter John L. Gipson died. Shortly before his death he became insane. The suit was revived by his widow, Mrs. Bertie Gipson, and his children, one of whom was an adult, the others minors. The cause proceeded to trial, resulting in a judg-

ment in favor of the wife and children as heirs, and in favor of Mrs. Bertie Gipson, as widow and beneficiary, in the amounts of $475 and $354.54, respectively. From this judgment the Columbian Mutual Life Insurance Company appealed here.

It appears that for the first time the following question has been raised in this state; that when the Columbian Mutual Life Assurance Society was converted and changed from a fraternal benefit association to a mutual life insurance company, it ceased to be such a fraternal benefit association, and lost the exemptions given such organizations under article 14 and section 5234 of chapter 127, Code 1930; that its agent, Mangum, came under section 5196, Code 1930, and since he was acting within the scope of his powers, as shown by the testimony, his act became the act of the appellant.

Section 5196 of the Code provides: "Every person who solicits insurance on behalf of any insurance company, or who takes or transmits, other than for himself, an application for insurance, or a policy of insurance, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, collect or transmit any premium of insurance, or make or forward a diagram of any building, or do or perform any other act or thing in the making or consummation of any contract of insurance, for or with any such insurance company, other than for himself, or who shall examine into or adjust or aid in adjusting any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance, or request, or by the employment of the insurance company, or of, or by any broker or other person, shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract; such person knowingly procuring by fraudu-

lent representations, payment, or the obligation for the payment, of a premium of insurance shall be punished by a fine of not less than one hundred dollars nor more than five hundred dollars, or be imprisoned for not more than one year."

We are of the opinion that when the amendment was adopted and the change made from a fraternal benefit society to a mutual life insurance company, it ceased to have the status of a lodge with a representative form of government, as defined in article 14 of chapter 127. The provisions in sections 5231-5234, in reference to lodges, representative government, etc., are elements of classification made on a reasonable basis necessary to the exemptions contained in section 5234. Section 5196 cannot be suspended arbitrarily. See section 87, Constitution of 1890.

The provision in the articles of amendment reads: "No rights, duties or obligations of members of the corporation, as determined by certificates or covenants issued prior to the approval and filing of this amendment, or as determined by the Constitution of the Columbian Mutual Life Assurance Society prior to said date, shall be affected by this amendment to the Articles of Incorporation, but, subsequent to its approval and filing, no contracts or certificates of fraternal benefit insurance shall be written by the corporation, and all of its insurance contracts shall be written as mutual life or disability insurance contracts and determined by the laws relating to mutual life or disability insurance companies." This provision does not change the effect of powers of agents after the abandonment of the fraternal benefit features; the effect being that when the Columbian Mutual Life Assurance became a mutual life insurance company it assumed the obligations of the existing contracts, but did not thenceforth preserve the immunity provided by section 5234, Code 1930, a part of article 14, chapter 127, on the subject of insurance.

After the lodge system and representative form of government ceased to exist, the immunities granted to

a secret fraternity, etc., ceased to exist under the changed classification. Thereafter the Columbian Mutual Life Insurance Company appointed its own agents, and there was no longer a lodge or local organization in existence, the relation becoming that of insurer and policy holder under the provisions of the article in the Code relating to mutual life insurance companies. The appellant was therefore bound by the acts of its agent in misleading Gipson as to the extent of disability necessary to entitle him to file a claim therefor; the act of the agent in that regard must be the act of the company itself, under section 5196 of the Code. It clearly appeared in the proof that Mangum was required to sign the application for the benefit, together with the person seeking the benefit, and that he was under the duty, if and when called on by the company to make investigations into such claims, and to report to and for the company the facts as he found them to exist. In other words, after the conversion of the company from a fraternal benefit society to a mutual life insurance company, Mangum was the agent of the company and not of the policy holder.

There was abundant evidence that the plaintiff, Gipson, was disabled, within the meaning of the law upon that subject, as declared in numerous decisions of this Court. There was some dispute as to whether this physical condition existed, but the claim of plaintiff is supported by abundant evidence, and the dispute, outside of Mangum's testimony, is largely as to what the disease was from which Gipson suffered, and not as to his being unable to follow his ordinary calling as a farmer. Practically all of the medical testimony showed that he should not have worked, afflicted as he was—whatever may have been the cause of his affliction, or the nature of the disease from which he suffered.

The jury found for the plaintiff, and their verdict is supported by ample testimony, and we find no errors in the ruling of the court or the instructions given the jury. Consequently, the judgment must be affirmed.

Affirmed.